Gennero GALTIERI, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellant.

John MATERA, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellant.

Nos. 75–4169, 76–1006.

United States Court of Appeals, Fifth Circuit.

Oct. 23, 1978.

Rehearing En Banc Denied Dec. 11, 1978.

James C. Hill, Circuit Judge, concurred specially and filed opinion.

Thornberry, Circuit Judge, dissented and filed opinion in which Godbold, Circuit Judge, joined.

Goldberg, Circuit Judge, dissented and filed opinion in which Tuttle, Circuit Judge, joined.

Roney, Circuit Judge, dissented and filed opinion in which Thornberry, Godbold and Lewis R. Morgan, Circuit Judges, joined.

Robert L. Shevin, Atty. Gen., Linda Collins Hertz, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Milton E. Grusmark, Miami, Fla., for petitioners-appellees.

Before BROWN, Chief Judge, TUTTLE, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.[*]

TJOFLAT, Circuit Judge:

The exhaustion of state remedies is a doctrine, grounded on notions of comity, that requires a state prisoner to present his claim of constitutional error to the state court system prior to petitioning for federal habeas corpus relief. The rule in this circuit is that a federal district court generally must dismiss, without prejudice, a state prisoner's petition for a writ of habeas corpus that contains a mixture of exhausted and unexhausted claims. Strong policy considerations require us to adhere to our rule that petitioners present *all* their claims to the state court system before turning to the federal courts.

This case was taken en banc because it poses a question not clearly answered by our precedent: what is the proper course for this court when a district court declines to dismiss a mixed petition and reaches the merits of an exhausted claim, and we are asked to review the decision on the merits? In the case before us, the court below granted writs of habeas corpus to petitioners Galtieri and Matera on the strength of an exhausted claim, although their petitions also raised unexhausted claims. The policy considerations bearing on the desirability of a district court's dismissal of a mixed petition are outweighed at the appellate level by new policy considerations; therefore, we shall review the merits of the issue decided by the court below rather than vacate the grant of the writs and require dismissal for want of exhaustion.[1]

The writs were granted on the petitioners' claim that the state prosecutor withheld certain vital information from the defense in violation of the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We hold that the petitioners' exhausted claim does not assert an error of constitutional dimension under *Brady* and its progeny. The district court's judgment granting the writs is therefore reversed.

## I

### A. *Exhaustion of State Remedies*

In May, 1967, the petitioners, Gennero Galtieri and John Matera, were convicted of robbery by a Florida jury in a joint trial. Galtieri and Matera appealed their convictions and sentences through the Florida court system.[2] After their direct appeals failed, the petitioners began unsuccessful collateral attacks on their judgments and

---

[*] Judges RUBIN and VANCE were not members of the court at the time of the submission of this case to the court en banc and did not participate in the consideration of this decision.

1. This was the disposition called for in the panel opinion. *Galtieri v. Wainwright*, 545 F.2d 942 (5th Cir. 1977).

2. The District Court of Appeal of Florida, Third District, affirmed both the convictions and Matera's sentence of life imprisonment, but it ordered Galtieri's case remanded for the entering of a proper judgment. *Matera v. State*, 218 So.2d 180 (Fla.Dist.Ct.App.1969). The Florida

Supreme Court denied the petition for certiorari. *Matera v. State*, 225 So.2d 529 (Fla.1969). Certiorari was also denied by the United States Supreme Court. *Galtieri v. Florida*, 396 U.S. 955, 90 S.Ct. 424, 24 L.Ed.2d 420 (1971).

After a proper judgment was entered in his case, Galtieri appealed through the state court system again. The district court of appeal quashed his appeal. *Galtieri v. State*, 234 So.2d 172 (Fla.Dist.Ct.App.1970). Certiorari was denied by the Florida Supreme Court, *Galtieri v. State*, 239 So.2d 101 (Fla.1970), and by the United States Supreme Court, *Galtieri v. Florida*, 401 U.S. 954, 91 S.Ct. 973, 28 L.Ed.2d 237 (1971).

sentences.[3] Following their second journey through the state court system, Galtieri and Matera filed petitions for writs of habeas corpus in the federal district court. These petitions were dismissed for failure to exhaust state remedies.[4] Petitions for writs of habeas corpus were then filed by Galtieri and Matera in the District Court of Appeal of Florida[5] and in the Florida Supreme Court and were denied.[6]

Thereafter, the petitions under review here were filed in the court below. Despite the petitioners' three trips through the Florida state court system, the district court found that two of the four constitutional claims they raised had not been presented to the Florida courts.[7]

The district court held a consolidated evidentiary hearing on the petitions of Galtieri and Matera. At that hearing, evidence was heard on all the claims asserted by the petitioners. On September 16, 1975, the district judge entered an order finding no merit in one of the exhausted claims: that the failure of a Florida appellate court to rule on a specific point raised on appeal deprived the petitioners of their constitutional right of appeal.[8] Record, vol. 1, at

91–92, No. 75–4169. As to the other exhausted claim, however, the district court concluded that the petitioners had proved their claim of a federal constitutional deprivation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Id.*

### B. *The* Brady *Claim*

Prior to their trial, the petitioners made a general request under *Brady* for any evidence favorable to the defense. The *Brady* claim treated by the court below involved the prosecutor's alleged withholding from defense counsel of grand jury testimony of a court witness. This witness, Bruce Braverman, had appeared before a New York grand jury on four occasions.[9] On the first two occasions, Braverman invoked the fifth amendment. He testified, however, at his third and fourth appearances, and his testimonies are relevant to the petitioners' claims. In Braverman's third appearance, he apparently recounted nothing incriminatory to the petitioners. In his fourth appearance, however, Braverman testified that in March, 1966, he met with the petitioners in New York and that they men-

3. Numerous motions to vacate judgment and sentence were filed by the petitioners pursuant to Fla.R.Crim.Pro. 3.850. At one point, the district court of appeal reversed the trial court's denial of the motions and remanded the cause for an evidentiary hearing. *Matera v. State*, 254 So.2d 843 (Fla.Dist.Ct.App.1971). That opinion, however, was subsequently quashed by the Florida Supreme Court. *State v. Matera*, 266 So.2d 661 (Fla.1972).

4. *Matera v. Florida*, Case No. 73–2–Civ–JE (S.D.Fla. March 8, 1973); *Galtieri v. Florida*, Case No. 73–3–Civ–CA (S.D.Fla. March 8, 1973).

5. *State ex rel. Matera v. Wainwright*, 277 So.2d 611 (Fla.Dist.Ct.App.1973); *State ex rel. Galtieri v. Wainwright*, 277 So.2d 610 (Fla.Dist.Ct. App.1973).

6. *Galtieri v. Wainwright*, No. 44,078 (Fla. Dec. 18, 1973); *Matera v. Wainwright*, No. 44,077 (Fla. Dec. 18, 1973).

7. The two unexhausted claims, that evidence obtained through illegal wiretaps was used and that the jury venire was improperly constituted, were treated by the district judge as "waived, for the purpose of the proceeding" in his order granting the writs on one of the

exhausted claims. Record, vol. 1, at 91. No such "waiver" is reflected in the record, however. Cf. *Beam v. Estelle*, 558 F.2d 782, 783 n. 1 (5th Cir. 1977) (record showed close questioning of petitioner by district judge prior to court's acceptance of waiver). Because we reverse the district court's grant of the writs and remand the case, the district court is directed to dismiss the petitions without prejudice if they contain unexhausted claims.

8. The petitioners did not question the district court's decision on this claim in their brief to this court. We treat this claim, therefore, as abandoned by the petitioners. *See Gardner v. Blackburn*, 569 F.2d 856 (5th Cir. 1978); *O'Berry v. Wainwright*, 546 F.2d 1204 (5th Cir. 1977); *Henzel v. Florida*, 475 F.2d 1271 (5th Cir. 1973).

9. Thereafter, a conspiracy indictment was issued in New York. The district court found that the indictment was returned for the "purpose of helping the Florida authorities. That indictment was later dismissed by the State of New York as the District Attorney's Office was convinced of Braverman's uselessness as a witness." Record, vol. 1, at 92, No. 75–4169 (Order of September 16, 1975).

tioned their plans to travel to Florida for the purpose of making a "score." The Harbor Island Spa had been robbed on March 31, 1966.

Braverman was called at the petitioners' trial as a court witness. Record, transcript of state trial, vol. 3, at 763. His direct testimony, in response to questions posed by the court, was innocuous. During the state's cross-examination, Braverman was impeached with his fourth grand jury testimony. *Id.* at 790–849. The petitioners, who claimed they were unaware of the third grand jury testimony until Braverman took the stand, then made a specific request to the trial judge for the transcript of that testimony. *Id.* at 826–27. The judge ordered that the trial proceed without the transcript, with the proviso that the defense could inquire into the third grand jury testimony during its cross-examination. *Id.* at 836. As we point out in Part III *infra*, the substance of the third grand jury testimony was adopted by Braverman during the course of his cross-examination by the defense.

## II

In order to explore the roles of the federal habeas courts in the treatment of "mixed" petitions, it is necessary both to define what exhausted and unexhausted claims are and to identify the conflicting policy considerations involved in the decision whether to dismiss a mixed petition. The federal writ of habeas corpus serves as a "swift and imperative remedy in all cases of illegal restraint or confinement." *Bra-*

*den v. 30th Judicial Circuit Court*, 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973) (quoting *Secretary of State for Home Affairs v. O'Brien*, [1923] A.C. 603, 609 (H.L.)). The exhaustion doctrine, however, has long operated to delay federal consideration of constitutional claims raised by state prisoners.[10] This doctrine, which is codified at 28 U.S.C. § 2254(b), (c) (1970),[11] requires that a state prisoner's claim first be presented to the state court system. For a claim to be exhausted, the state court system must have been apprised of the facts and the legal theory upon which the petitioner bases his assertion. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 402, 97 L.Ed. 469 (1953). The basic rationale for this requirement is that

"it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation . . . . Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Fay v. Noia*, 372 U.S. 391, 419–420, 83 S.Ct. 822, 838–39, 9 L.Ed.2d 837 (1963) (quoting *Darr v. Burford*, 339 U.S. 200, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)). A major concern is that, without the exhaustion doctrine, the

---

**10.** The Supreme Court traced the history of the writ of habeas corpus and the development of the exhaustion doctrine in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 827–42, 9 L.Ed.2d 837 (1963).

**11.** *Section 2254 provides, in part, as follows:*

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pur-

suant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

state court system would be isolated from federal constitutional issues and would not have an impetus to develop and apply federal constitutional law. *Gonzales v. Stone*, 546 F.2d 807 (9th Cir. 1976); *Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1094–95 (1970).

In some circumstances, however, it is proper for federal courts to treat claims technically unexhausted. As the Supreme Court stated in *Fay v. Noia*, "The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.'" 83 S.Ct. at 839 (quoting *Bowen v. Johnston*, 306 U.S. 19, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939)). The Supreme Court has "consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint." *Id.* 83 S.Ct. at 842. Because exhaustion is not considered to be a jurisdictional prerequisite, the federal courts have heard claims not previously considered by the state courts.

The exceptions to the exhaustion doctrine illustrate the tension between the swift vindication of the petitioner's constitutional rights and the comity principles undergirding the doctrine. Whether the reason for reaching an unexhausted claim is termed a satisfaction of or an exception to the doctrine, it is clear that the federal court must weigh the conflicting interests served by the federal writ of habeas corpus and by the exhaustion doctrine before addressing the merits of an unexhausted claim. Exceptions to the exhaustion doctrine have been developed judicially to cover situations where mechanical adherence would not further the goals of the exhaustion doctrine or would frustrate an overriding federal concern.

Two of the exceptions to the exhaustion doctrine are codified in section 2254(b). A person in state custody need not attempt to exhaust the state's remedies when "either there is an absence of available State corrective process" [12] or there is "the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." [13]

---

**12.** Even when the state does provide procedures for remedying constitutional errors, exhaustion has not been required when the state procedures do not afford swift vindication. Exhaustion ought not be required when the "state procedural snarls or obstacles preclude an effective state remedy." *Bartone v. United States*, 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963); *Marino v. Ragen*, 332 U.S. 561, 68 S.Ct. 240, 243, 92 L.Ed. 170 (1947) (per curiam) (Rutledge, Douglas, Murphy, JJ., concurring). An "undue delay" by the state in treating a prisoner's petition will obviate the need for exhaustion. As we have stated, "Comity does not require that the federal courts decline to exercise jurisdiction in the face of allegations that the state courts have been presented with the merits of a claim for habeas corpus relief and have, for one reason or another, refused or been unable to act upon the claim." *Martin v. Estelle*, 546 F.2d 177, 178 (5th Cir. 1977) (quoting *St. Jules v. Beto*, 462 F.2d 1365, 1366 (5th Cir. 1972)), *cert. denied*, 431 U.S. 971, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977); *Smith v. Estelle*, 562 F.2d 1006 (5th Cir. 1977); *West v. Louisiana*, 478 F.2d 1026 (5th Cir. 1973), *aff'd regarding exhaustion en banc*, 510 F.2d 363 (5th Cir. 1975).

The Supreme Court has held that the doctrine does not require state prisoners to file repetitious applications in the state courts. Therefore, if a prisoner has fairly raised the issue on direct appeal, he is not also required to attempt a collateral attack in state postconviction proceedings. The mere possibility of success in additional state proceedings does not bar federal consideration of the claim. *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971); *Cronnon v. Alabama*, 557 F.2d 472, 473 (5th Cir. 1977); *Bishop v. Wainwright*, 511 F.2d 664 (5th Cir. 1975), *cert. denied*, 425 U.S. 980, 96 S.Ct. 2186, 48 L.Ed.2d 806 (1976).

**13.** Since the inception of the exhaustion doctrine, federal courts have recognized that "special" or "exceptional" circumstances may warrant federal consideration of claims without prior resort to the state court system. In some cases, the federal interest is paramount, so that comity considerations are overridden. Thus, in 1886, the Supreme Court stated, "[I]n . . . cases of urgency, involving the authority and operations of the general government, . . . the courts of the United States have frequently interposed by writs of *habeas corpus*, and discharged prisoners who were held in custody under state authority." *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 740, 26 L.Ed. 868 (1886) (emphasis in original); *see e. g., Cunningham v. Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890) (United States deputy marshal, held on charge of homicide committed in the performance of his duty to protect Justice Field, discharged on habeas corpus from state custody).

A petitioner may not be required to exhaust his claim if a change in the law occurs between the exhaustion of available state remedies and the filing of a petition for federal habeas corpus. If the change provides an effective state procedure, *Texas v. Payton*, 390 F.2d 261, 270 (5th Cir. 1968), or a fundamental variation in substantive federal law, the petitioner generally will be required to return to the state courts. If, however, the change is in the substantive state law on the federal issue, federal consideration of the petitioner's claim will generally not be delayed. *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). In the latter situation, the state courts already had the opportunity to consider the petitioner's claim, and the goals underpinning the exhaustion doctrine would not be furthered.

With the general background of the policies served by the writ of habeas corpus, the exhaustion doctrine, and the exceptions to the exhaustion doctrine in mind, we shall discuss the approach we think a federal court must adopt in considering a mixed petition. Because the policy considerations differ significantly at the trial and appellate stages of a federal habeas proceeding, we shall assess the respective functions of the district court and the court of appeals in considering a mixed petition.

### A. The Federal District Court

The policy in this circuit is that a federal district court must dismiss without prejudice a "mixed" petition for a writ of habeas corpus filed by a state prisoner. *West v. Louisiana*, 478 F.2d 1026, 1034 (5th Cir. 1973), *aff'd regarding exhaustion en banc*, 510 F.2d 363 (5th Cir. 1975). A "mixed" petition is one that asserts both exhausted claims and unexhausted claims that do not fit an exception to the exhaustion doctrine; that is, some of the claims have not been presented to the state court system so that the custodial state has not yet had an opportunity to correct all of the alleged constitutional errors.

At the outset, we note that requiring exhaustion of all claims does not "bar the federal courthouse door" to any petitioner. *But cf. Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (both cases holding that some issues are not cognizable in federal habeas proceedings). Nor does our discussion today in any way abrogate or infringe upon the exceptions to the exhaustion doctrine that have been developed through the years. If the unexhausted claims in a mixed petition fit an exception to the exhaustion doctrine, it would be improper for the district court to dismiss the petition.

The language of the habeas corpus statute refers to the exhaustion of a "question" rather than of the "case."[14] We do not consider this language to be a mandate to the federal courts to hear each "question" as it is exhausted; rather, we consider the statute to set forth the minimum limits of the exhaustion doctrine. The Supreme Court has not addressed this issue directly. In *Francisco v. Gathright*, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974), a petitioner sought to overturn a lower court's dismissal of his exhausted claim because it was joined with an unexhausted one. The Court expressly reserved this issue and decided the case on other grounds.[15]

---

Federal courts have not required exhaustion when "an analysis of the state courts' substantive holdings of federal law indicates that an application for relief by the prisoner to the state courts would be futile." *Developments in the Law—Federal Habeas Corpus*, 83 Harv.L. Rev. 1038, 1098 (1970) (footnote omitted). *See Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 2100, 40 L.Ed.2d 628 (1974) (Supreme Court did not require further exhaustion after court of appeals held that "resort to the state courts would be futile."); *Reed v. Beto*, 343 F.2d 723

(5th Cir. 1965), *aff'd on other grounds sub nom. Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

**14.** 28 U.S.C. § 2254(c) (1970), quoted in note 11 *supra*.

**15.** The Supreme Court has reviewed a case on the merits of an exhausted claim while noting the presence of unexhausted claims. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 1104, 31 L.Ed.2d 408 (1972). This does not militate against our rule that district courts ought to

■ Our policy is sound: federal district courts ought to dismiss mixed petitions so that petitioners will exhaust *all* their constitutional claims prior to federal court intervention. Considerations of comity, avoidance of piecemeal litigation, economy of judicial energy, and the fullest consideration of a petitioner's claims are best served if all of a petitioner's claims are presented to the state court system at one time. If he is not afforded relief, then he may petition the federal courts for a review of all his claims. The goal is to have a petitioner travel through each system only once, at most, in his quest for vindication of alleged constitutional errors. Our policy furthers this goal by creating an incentive for the petitioner to develop fully all his claims in the state court system. Because we have not always articulated the rationale underlying the policy for exhaustion of all claims, we take this opportunity to explicate our reasoning.[16]

As a starting point for our explication, we note the presence of a strong federal policy in the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. foll. § 2254 (1977), and section 2254, that favors both the exhaustion of *all* of a petitioner's claims prior to their presentment to a federal habeas court and the prompt resolution of those claims in *one* hearing.[17]

It is urged that we adopt the policy followed in other circuits of encouraging district courts, when presented with mixed petitions, to treat unrelated exhausted claims while dismissing the unexhausted ones. See note 16 *supra*. In balancing the relevant considerations, other circuits find that the immediate treatment of the exhausted claims outweighs all other concerns. In our opinion, this approach is unrealistic and ignores many strong federal policies. We think that our requirement of complete exhaustion is the better practice and is in line with explicit congressional pronouncements.

Rule 9(b) of the Rules Governing Section 2254 Cases was adopted by Congress "to minimize abuse of the writ of habeas corpus by limiting the right to assert stale claims and to file multiple petitions." Rules Governing Section 2254 Cases in the United States District Courts, Rule 9, 28 U.S.C.A. foll. § 2254 (1977), Advisory Committee Note at 1137. To deter a petitioner from presenting his claims in successive petitions and to encourage the disposition of all claims in one proceeding, rule 9(b) authorizes a district court to dismiss a "second or successive petition [if] the judge finds that failure of the petitioner to assert [new and different] grounds in a prior petition constituted an abuse of the writ." [18]

---

dismiss mixed petitions without prejudice. As will be discussed *infra*, a reviewing court is in a position different from that of a district court. Once a federal habeas court has reached the merits of a claim and the case is presented for appellate review, the policy considerations that dictate dismissal for want of exhaustion are no longer controlling, and the reviewing court must entertain the case on its merits.

**16.** We are aware that all but one of our sister circuits allow (and some require) district courts to consider the exhausted claims in a mixed petition, at least if the exhausted claims are "unrelated" to the unexhausted ones. *E. g., Miller v. Hall*, 536 F.2d 967 (1st Cir. 1976); *Cameron v. Fastoff*, 543 F.2d 971 (2d Cir. 1976); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976) (en banc); *Hewett v. North Carolina*, 415 F.2d 1316 (4th Cir. 1969); *Meeks v. Jago*, 548 F.2d 134 (6th Cir. 1976) *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977); *Brown v. Wisconsin State Dep't of Public Welfare*, 457 F.2d 257 (7th Cir. 1972); *Tyler v.*

*Swenson*, 483 F.2d 611, 614–15 (8th Cir. 1973); *Smith v. Gaffney*, 462 F.2d 663 (10th Cir. 1972). The Ninth Circuit has adopted our approach. *Gonzales v. Stone*, 546 F.2d 807 (9th Cir. 1976). Prisoners in the District of Columbia petition under 28 U.S.C. § 2255 (1970); therefore, the District of Columbia Circuit has not addressed this question.

**17.** Although the Rules Governing Section 2254 Cases were not in effect at the time Galtieri and Matera filed their petitions, the policies implemented by the rules are derived from prior Supreme Court precedent, *see e. g., Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and are clearly relevant to our discussion.

**18.** This provision adopts the Supreme Court's rationale in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). H.R. Rep.No.94–1471, 94th Cong., 2d Sess. 5–6, *reprinted in* [1976] U.S.Code Cong. & Admin.

Rule 9(b) must be read in conjunction with rule 9(a), which provides as follows:

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

This provision, embodying a laches concept, is designed to ensure the prompt presentation of claims.[19]

Thus, rule 9 forces a petitioner to assert his claims *promptly* and in *one* petition. To the extent that he withholds a claim, whether exhausted or not, from his habeas petition, he runs the risk of a rule 9(a) laches defense.[20] If a petitioner does not assert an already exhausted claim in his first petition, he runs the additional risk of a rule 9(b) dismissal.

The obvious intent in the enactment of rule 9 is to bring *all* of a petitioner's claims to light the first time he petitions in a federal habeas court. This purpose must be considered in conjunction with the section 2254 provision that forbids federal court treatment of unexhausted claims. Consequently, one federal proceeding embracing all claims can be attained only by requiring a petitioner to submit all of his claims to the state courts before he seeks federal habeas corpus relief.

We think that our approach comports with the purposes of rule 9 and section 2254. Although there is an initial delay in the consideration of an exhausted claim when a federal court dismisses a mixed petition, we are nevertheless convinced that our approach eventually will result in the timely disposition of all claims in both the state and the federal courts. By dismissing mixed petitions, thus giving full effect to the objectives of rule 9, we enhance the potential for the prompt and efficient consideration of all of a petitioner's claims in state court and for an early end to his litigation. Since it is axiomatic that the prompt and efficient consideration of claims increases the chance for a just result, should it not be anticipated that a state court would grant relief on a meritorious claim seasonably presented and fully litigated? And should it not also be anticipated that a state prisoner might accept an adverse state court determination of his

News 2478, 2482; Advisory Committee Note at 1138–39.

In *Sanders*, the Court stated as follows:
[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. . . . Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay.
83 S.Ct. at 1078. The initial burden is on the government to plead an abuse of the writ. *Id.*, 83 S.Ct. at 1074–75, 1075, 1078. The burden then shifts to the petitioner to prove that he has not abused it. *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).

19. Rule 9(a) "should have a positive effect in encouraging petitioners . . . to assert all their claims as soon after conviction as possible." Advisory Committee Note at 1138. "The interest of both the petitioner and the govern-

ment can best be served if claims are raised while the evidence is still fresh." *Id.* at 1137.

Congress also provided for a form petition, which "encourages the petitioner to raise all of his available grounds in one petition. It sets out the most common grounds asserted so that these may be brought to his attention." *Id.* at 1139.

20. At first blush, it would seem that laches could not be raised as a defense to the delayed presentation of an exhausted claim, e. g., where the petitioner divides his exhausted claims, asserting one in the first petition and one in the second, because the state has been given notice of the claim. By definition, an exhausted claim has been presented to the state courts. It is possible, however, that laches could still be raised in a case where the state would be materially prejudiced by the late presentation of the exhausted claim. Events could occur between the state exhaustion and the later presentation of the claim in federal court, such as the disappearance of a critical witness whose testimony had not been preserved, that would prejudice the state's case.

claim, if fairly tried? If neither of these results are attainable, then the reasons for the exhaustion doctrine are specious, congressional adherence to the exhaustion provisions of section 2254 and Supreme Court precedent notwithstanding. We are in accord with the expressions of Congress and the Supreme Court; the exhaustion doctrine is both workable in and valuable to our system of federalism.

We think our policy serves another salutary objective: it reduces the likelihood that an otherwise meritorious claim will be dismissed on grounds of delay. This is a desirable goal from a petitioner's standpoint, and, moreover, it serves the ends of justice.

A petitioner who, for tactical reasons, seeks habeas relief in this circuit in a piecemeal fashion and clutters up his federal habeas petition with unexhausted claims is deterred by our requirement that the mixed petition be dismissed. The only way a petitioner can carry out a strategy of piecemeal attacks on his conviction and also avoid the consequences of our policy is to withhold altogether the assertion of unexhausted claims in his federal petition. In doing so, he runs the risk of a rule 9(a) dismissal when, later, he initially asserts such claims in federal court. He runs this risk because he invites the state to contend that his failure to present the claims in his first petition, along with his exhausted claims, lulled the state into believing that the first petition constituted a full constitutional attack on his conviction. The prejudice to the state could take many forms, such as its inability to preserve the evidence necessary to refute the delayed claims. The presence of rule 9(a) makes it unlikely, we think, that a petitioner with unexhausted meritorious claims will forego the chance to preclude a possible laches defense; there is a great incentive for him to incorporate such claims into his petition.

In sum, the rule of this circuit encourages the presentation of exhausted claims in one petition as the norm. Where the petitioner is cognizant of the possible constitutional infirmities of his conviction, multiple petitions should not occur unless he is willing to run the risk of a laches dismissal under rule 9(a). There are, of course, situations in which successive petitions cannot be avoided. We are concerned here, however, with the petitioner who, prior to seeking federal relief, knows that he has several claims and not with the petitioner who, through a change in the law or other excusable circumstance, realizes after his first federal habeas petition that he has other possibly meritorious claims.

We are convinced that the alternative approach, followed in the majority of circuits, runs against the spirit of rule 9 and upsets the balance between the rule and section 2254, because it encourages, rather than discourages, piecemeal litigation. Under that approach, the petitioner, while pursuing his exhausted claims in federal court, may simultaneously litigate his remaining claims in state court and, if unsuccessful in that forum, return to the federal system. In our judgment, a policy that invites the prosecution of successive petitions, each asserting newly exhausted claims, impedes the orderly and complete consideration of the constitutional issues in state court and greatly diminishes the ability of the federal habeas court to dispose of a petitioner's claims in one proceeding. The federal district judge who dismisses only the unexhausted claims creates, in effect, two petitions for writs: one, containing the exhausted claims, that is ripe for immediate adjudication; the other, containing the unexhausted claims, that must await state court treatment. Unlike our rule, the rule of these circuits does not discourage the litigious prisoner; as long as he is able to evade the rule 9(a) laches defense by the state, he is free to prosecute multiple petitions. By filing a mixed petition, a state prisoner maneuvers himself into a position from which he can contend, in a subsequent habeas petition containing his formerly unexhausted claims, that the state, having had previous notice of the claims, cannot establish prejudicial delay. The rule of these circuits also frustrates the notion of expedition embodied in rule 9(a) by creating an atmosphere in which the norm is that

some of a petitioner's claims are delayed federal court treatment; the exhausted claims go forward while the unexhausted ones are simultaneously litigated in state court.[21]

The filing of a mixed petition not only aids a petitioner in circumventing a future laches defense but also may serve his trial strategy as well. The mere inclusion of unexhausted claims, especially those appearing to be meritorious, might be calculated to influence the district court's resolution of the exhausted claims even though the unexhausted claims will ultimately be dismissed. The petitioner might even succeed in influencing the court by proffering evidence of apparent constitutional error in support of his unexhausted claims. This could well occur, despite the prohibition against hearing the merits of unexhausted claims, because it is sometimes difficult for a district judge to determine from the state court record alone whether all the claims have actually been exhausted, and thus should be entertained, or, if there are unexhausted claims, whether they are "related" to the exhausted ones, thus mandating that all claims be dismissed. If, under these circumstances, the petitioner succeeds in litigating to final judgment the merits of his exhausted claims, he has received whatever benefit might flow from the premature incorporation of "unrelated" unexhausted claims in his petition. And even where he suffers the dismissal of such claims, he has reserved the right to return to federal court another day, if need be, in his quest for release from custody.

As an example of what can transpire at the evidentiary hearing on the merits of an exhausted claim when matters germane to unexhausted claims are introduced, we note what took place in the court below. Although the district judge found that two of the claims of petitioners Galtieri and Matera were unexhausted, testimony was heard on all the claims, and during the course of the hearing new and unexhausted claims surfaced. The record of the hearing clearly shows that the district judge considered all the claims, even though his dispositive order granted relief only on a claim that was found to be exhausted.

If the court below had followed the rule of this circuit, any prejudicial influence that might have derived from the unexhausted claims would have been avoided. The district court would have dismissed the petitions for want of complete exhaustion. If the petitioners were to return to federal court after submitting their claims to the state system, all the evidence could properly be considered.

In addition to harmonizing rule 9 and section 2254, our approach furthers federal-state comity. Although comity in a narrow sense has been served by the prior state consideration of the exhausted claim, there are broader aspects to comity between concurrent court systems.

First, we observe that the state has an interest in the resolution of the entire case, as well as in each of the component constitutional assertions that the petitioner may bring to challenge his conviction. An important value in our jurisprudence is the finality of criminal trials, *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 3050 n. 31, 49 L.Ed.2d 1067 (1976) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 2064, 36 L.Ed.2d 854 (1973) (Powell, J., concurring)), and the concept of finality encompasses the resolution of the petitioner's entire case, not just the resolution of each claim. *See Wheeler v. Beto,* 407 F.2d 816, 817 (5th Cir. 1969). The Supreme Court has admonished the federal habeas courts not to "detract from the perception of the trial of a criminal case in state court as a decisive and portentous event." *Wainwright v. Sykes,* 432 U.S. 72, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). The piecemeal litigation of challenges to a conviction obviously disparages the state courts. Insofar as the state has an interest in the conviction, our

---

**21.** Once the unexhausted claim is dismissed, the potential for subsequent dismissal by the federal district court for laches on resubmis- sion of the claim after exhaustion forces the petitioner to seek state relief immediately.

requirement of exhaustion of all claims furthers federal-state comity considerations.[22]

Second, there is less disruption in the custodial status of the petitioner when he is required to be brought before a federal tribunal only once. Complete exhaustion lessens the possibility of intermittent interruption of a petitioner's prison sentence. In this case, the court below released Galtieri and Matera under the sponsorship of their attorneys. Record, No. 75–4169, vol. 1, at 84; Record, No. 76–1006, vol. 1, at 77. Since we are reversing the district court, they will be incarcerated again, although it is possible that they may ultimately be released on one or more of their as yet unexhausted claims. Clearly, the state's correctional system, especially its rehabilitation programs, suffers when this occurs.

Third, dismissing only the unexhausted claims could produce untoward effects if the petitioner prosecutes those claims in state court while pursuing the exhausted claims through the federal system. The possibility is not remote that the state and federal courts would grant inconsistent relief on the claims. Depending on the character of each of the claims involved, one system might grant the petitioner a new trial while he remains incarcerated; the other might fashion relief that results in his immediate release from custody. The spec-

ter of such incompatible dispositions clearly does not foster harmonious federal-state relations. If the state courts stay the prosecution of the unexhausted claims pending before them, awaiting the outcome of the federal litigation, the petitioner might be able to assert the "undue delay" exception to the exhaustion doctrine, and the state courts would be deprived altogether of considering his unexhausted claims.

Finally, each time the federal court interferes with the state's criminal justice system, it disrupts the state's orderly administration of its affairs. Our intent is to keep these intrusions to a minimum.

## B. *The Appellate Court*

We must reevaluate the conflicting policy considerations to determine the proper course of action for this court when we are asked to review a district court's decision on the merits of an exhausted claim presented in a mixed petition. The panel of this court that originally heard this appeal refused to consider the merits and vacated the district court's grant of the writs on the procedural ground of lack of exhaustion. *Galtieri v. Wainwright*, 545 F.2d 942 (5th Cir. 1977). This was the logical disposition in light of this circuit's policy against the entertainment of mixed petitions.[23]

---

22. Moreover, piecemeal litigation of numerous claims delays the finality of the petitioner's conviction, a result we consider to be detrimental to both the petitioner and society.

23. A survey of the case law in this circuit reveals that our treatment of mixed petitions, in the implementation of this policy at the appellate level, has been less than consistent. In *Harris v. Estelle*, 487 F.2d 1293, 1297 (5th Cir. 1974), Judge Clark, writing for the panel, noted, "The cases in this circuit are conflicting in result and none reason the basis for their differing dispositions." There are three situations in which an appeal to this court may be taken from a judgment on a mixed petition.

In the first situation, where the district court has declined to reach the merits and has dismissed the entire petition without prejudice, we have affirmed its decision. *E. g., Parson v. Beto*, 463 F.2d 249 (5th Cir. 1972); *Burroughs v. Wainwright*, 454 F.2d 1165 (5th Cir. 1972); *Wheeler v. Beto*, 407 F.2d 816 (5th Cir. 1969). We have found no case in which this court has reversed a district court's dismissal for want of

complete exhaustion and remanded for a hearing on the merits.

In the second situation, where the district court has denied relief on the merits of the exhausted claims and has dismissed the unexhausted ones, we have sometimes vacated the district court's judgment and required dismissal of the petition to ensure that the premature claims would receive prior state court treatment. *E. g., Hargrett v. Wainwright*, 474 F.2d 987 (5th Cir. 1973). In other cases, however, this circuit has reached the merits of the exhausted claims and affirmed the denial of the writ. *E. g., Allen v. Estelle*, 568 F.2d 1108 (5th Cir. 1978); *Singleton v. Estelle*, 492 F.2d 671 (5th Cir. 1974); *Harris v. Estelle*, 487 F.2d 1293 (5th Cir. 1974); *Hill v. Dutton*, 440 F.2d 34 (5th Cir. 1971). We have also reversed the district court's denial on the merits and remanded the case for further proceedings. *Allen v. Henderson*, 434 F.2d 26 (5th Cir. 1970).

In the third situation, where the district court grants relief on the exhausted claim in a mixed petition, this court has both affirmed the grant,

In theory, if a court of appeals steadfastly refuses to review the merits of exhausted claims in mixed petitions and remands to the district courts with instructions to dismiss such petitions for want of exhaustion of *all* claims, the district courts will be deterred from reaching the merits of mixed petitions. In our judgment, however, the practical effect of mechanical adherence to such a course by a reviewing court does not appreciably advance the objectives of the exhaustion doctrine. As we shall discuss, it brings further disruption to a state's system of criminal justice and to federal-state relations.

When the district court has granted the writ on an exhausted claim in a mixed petition and we decline to review the merits, vacate the issuance of the writ, and order the district court to dismiss the petition so that the state courts will have an opportunity to consider *all* of the constitutional attacks on the petitioner's conviction, federal-state court friction is inevitable. A refusal to review the merits places the state courts in the anomalous position of considering claims, brought by a prisoner in state custody, while knowing that a federal district court has already found constitutional error in the prisoner's conviction. It would be reasonable for a state judge hearing the unexhausted claims to expect that the conviction would ultimately be set aside regardless of the result he reached. This would be so even though the district court's earlier findings and conclusions justifying the grant of the writ, having been vacated on appeal without intimation as to their correctness, were a nullity and, moreover, may have been erroneous. Of course, if the

state judge grants relief and sets the conviction aside, the frustration of the state system of criminal justice wrought by the earlier federal intrusion will be ameliorated since the state court will have joined in the determination that the conviction was unconstitutionally obtained. If, however, the state court finds no merit in the prisoner's claims, thus placing the two judicial systems in direct conflict, further friction would follow inexorably.

If the state court denies relief, the prisoner will promptly return to federal court to obtain the relief awarded him on his first trip to that forum. If the case is assigned to the district judge who issued the writ on the earlier occasion, the state may seek to disqualify him on the theory that it is unrealistic to expect the same district judge to reach a contrary result on a claim simply resubmitted. Transferring the case to another judge would not allay the dilemma. Even though the successor judge's ruling on the merits might in truth be unassailable, it might be perceived as less than impartial: was the writ granted in deference to the prior judge's ruling, or was it denied to foreclose the inference that the previous action was rubber-stamped? This potential for perceived injustice could be exacerbated if the state court, in upholding the prisoner's conviction following a hearing on the merits, made comprehensive findings of fact. Section 2254(d) [24] creates a presumption that state court findings are correct. Upon the prisoner's return to federal district court, the court could well be faced with a state court judgment with findings and conclusions of law indicating that the state court either reconsidered the prison-

---

*Moye v. Highsmith*, 460 F.2d 1388 (5th Cir. 1972), *aff'g Moye v. Georgia*, 330 F.Supp. 290 (D.Ga.1971), and reversed the grant, *Shuler v. Wainwright*, 491 F.2d 1213 (5th Cir. 1974), after reviewing the issue on the merits.

**24.** Section 2254(d) provides in part as follows:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the ap-

plicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct . . . ..

Subsection (d) goes on to place the burden on the petitioner "to establish by convincing evidence that the factual determination by the State court was erroneous" unless one of the exceptions to the presumption of correctness, which are enumerated in the statute, is established or is admitted by the state. 28 U.S.C. § 2254(d)(1)–(8) (1970).

er's previously exhausted claim (the one decided on the merits in the first federal habeas proceeding) or tried factual issues, in connection with the unexhausted claims, that went integrally to the merits of the exhausted claim.[25] In such a situation, the district court might find itself bound by the state findings to reach a result antithetical to its prior determination.

The potential for federal-state conflict is substantial even when the district court does not grant the writ on the merits and the appellate court vacates the district court's judgment for want of exhaustion of all claims. Since the appellate disposition carries no implication as to the correctness of the district court's resolution of the merits, the prisoner is free, depending on the outcome of the state court consideration of his unexhausted claims, to relitigate in federal court the merits of his previously exhausted claim. There is nothing to preclude the state court, if it reconsiders that claim (together with the previously unexhausted claims), or the district court, in round two, from reaching a result on the exhausted claim that is at odds with the district court's initial disposition. Moreover, in the second presentation of the petition in district court, the problem regarding the judge's qualification to sit may arise.

■ The primary goal of the exhaustion doctrine is to prevent "unnecessary conflicts between courts equally bound to guard and protect rights secured by the Constitution."[26] *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) (quoting *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886)). As we have discussed, a refusal to reach the merits on appeal when the court below has reached

them will not advance this goal; the conflict has already been created, and a declination on our part would merely aggravate the problem. In addition to the federal-state conflict, we have also demonstrated the potential for antithetical resolutions of the petitioner's case in the federal court system when it is required to consider the merits of a claim for a second time following intervening state proceedings. Such inconsistency in disposition, which in a given case may simply be the product of procedural nuances, is a consequence inexplicable in logic or reason to the public, if not to the legal profession.

■ To summarize our discussion today, we conclude that federal district courts in this circuit *must* dismiss state prisoners' mixed petitions. In the rare event, however, that a district court erroneously reaches the merits of an exhausted claim in a mixed petition and an appeal is taken from its dispositive order, we shall review the merits of the claim.

### III

Turning to the claim on which the district court granted relief, we shall treat the claim as it did: as an unrelated, exhausted *Brady* claim of error in the withholding of Braverman's prior grand jury testimony. We note, however, that the record of the evidentiary hearing raises serious questions, which have not been presented to the state courts, that are intertwined with the narrow question reached by the district court.

■ In addressing the petitioners' *Brady* claim, we note at the outset that a defendant is not denied a fair trial in the context of *Brady* and the due process clause

---

25. A previously exhausted claim might be reconsidered, for example, under a state rule permitting the rehearing of a case on grounds of newly discovered evidence. Even if it were inappropriate under state law for the court to reconsider an exhausted claim, findings of fact supporting a court's prior denial of such a claim might nevertheless be made as an integral part of the court's findings on the unexhausted claims, especially where those claims, though facially "unrelated" to the exhausted claim, are founded on common facts.

26. We note that vacating a district court's judgment, whether it grants or denies the writ, without reaching the merits of an exhausted claim does not aid the state court's development and application of federal constitutional law. See text accompanying note 11 *supra*. An authoritative pronouncement on the correctness of the state's decision on the constitutional issue is delayed, if it is made at all.

of the fourteenth amendment merely because he has not been given access to evidence that is arguably favorable. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).[27] Some degree of materiality of the nondisclosed evidence to the guilt-finding process must be demonstrated by the one seeking reversal.[28] A lower materiality standard is imposed in cases involving specific rather than general *Brady* requests, so that the prosecutor is encouraged to seek a judicial determination regarding the discoverability of specifically requested matter. *Id.*, 96 S.Ct. at 2399. To the extent that a specific request was made by the petitioners in this case, it was made before the trial judge, and he ordered that the trial proceed without the production of Braverman's third grand jury testimony. Under these circumstances, a fair trial is denied only "if the omitted evidence creates a reasonable doubt [as to the defendant's guilt] that did not otherwise exist." *Id.*, 96 S.Ct. at 2402. With this standard in mind, we conclude that the record does not justify the granting of the writ by the court below.[29]

The trial transcript shows that Braverman was called as a court witness and was therefore cross-examined by both sides. Record, transcript of state trial, vol. 3, at 763–945. On questioning by the court, Braverman stated that on March 16, 1966, he conversed with the petitioners but that the Harbor Island Spa, the site of the robbery, was not mentioned. *Id.* at 771. Following this direct testimony, the state sought to impeach Braverman with the inconsistent testimony he had given at his fourth New York grand jury appearance. At that stage in the trial proceedings, defense counsel objected to the state's use of the fourth grand jury testimony, which was then made available to the defense. *Id.* at 773, 784–85. In response to the state's impeachment, Braverman himself disclosed that he had testified during his third grand jury appearance. He stated that his trial testimony was consistent with this prior grand jury testimony and that his fourth grand jury testimony was a fabrication. *Id.* at 791, 807, 826. The defense sought to obtain the third grand jury testimony from the state, but the state denied ever having access to that evidence.[30] *Id.* at 826–27,

**27.** In *Agurs*, the Supreme Court discussed three situations in which *Brady* violations may occur in a given case. In the first, the prosecution knows or should know that the undisclosed information indicates that the prosecution's case will include perjured testimony. In the second, the defense specifically requests *the disclosure of evidence that was withheld.* In the third, no request or only a general request for all exculpatory material is made, and certain exculpatory material is not tendered. 96 S.Ct. at 2397–99. In *Garrison v. Maggio*, 540 F.2d 1271 (5th Cir. 1976), *cert. denied*, 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977), as we recently stated in *United States v. Anderson*, 574 F.2d 1347, 1353 (5th Cir. 1978), this circuit "defined a fourth type of situation in which the *Brady* doctrine applies: the prosecutor fails to disclose purely impeaching evidence not concerning a substantive issue, in the absence of a specific defense request."

**28.** Varying degrees of materiality are assigned depending upon the context of the alleged violation. See note 27 *supra.* Where allegedly perjured testimony is used to obtain the conviction, the lowest standard of materiality is exacted. This is so because a conviction based on perjured testimony is most offensive to our concept of justice and the right to a fair trial. This circuit sets the highest standard of materi-

ality when the prosecutor withholds purely impeaching material. *United States v. Anderson*, 574 F.2d 1347, 1354 (5th Cir. 1978).

**29.** The district court's evidentiary hearing brought to light other evidence allegedly improperly withheld from the defense. These claims have not been presented to the state courts and therefore will not be treated here. We note, however, that the "constitutional obligation is [not] measured by the moral culpability, or the willfulness, of the prosecutor." *Agurs*, 96 S.Ct. at 2400 (footnote omitted).

**30.** The testimony at the evidentiary hearing below corroborated the Florida prosecutor's statement that the state did not have a transcript of Braverman's prior testimony for use at the trial. Record, vol. 2, at 109–10, No. 75–4169. Our decision today pretermits the issue whether the state had an obligation to secure the transcript once its contents were apparent. *Cf. United States v. Beaver*, 524 F.2d 963, 966 (5th Cir. 1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756 (1976); *United States v. Gonzales*, 466 F.2d 1286 (5th Cir. 1972) (both cases holding that *Brady* does not impose on the prosecutor a general duty to help the defense find evidence favorable to the accused).

832, 840. The court ordered that the trial continue and permitted the state to use the incriminating fourth grand jury testimony for the limited purpose of impeaching Braverman's innocuous direct testimony. The court further ordered, however, that the defense could inquire into the substance of the third grand jury testimony during its cross-examination. *Id.* at 836.

In response to the state's questioning, Braverman stated that at the March meeting with the petitioners, Galtieri offered to lend him $1,000 after he made his "score" in Miami. *Id.* at 842–47. Braverman's testimony included nothing else of substance on the issue of the petitioners' guilt.

The defense followed with its cross-examination of Braverman, centering on his statements that no incriminating statements were made by the petitioners. *Id.* at 849–923. The trial transcript leaves no doubt that the defense extensively and effectively cross-examined Braverman with the apparent substance of his third grand jury testimony (as recounted by Braverman). After reviewing the trial transcript, we find ourselves in accord with the Florida Supreme Court's conclusion that Braverman had been so effectively impeached "that little, if anything, remained of his credibility." *State v. Matera,* 266 So.2d 661, 665 (Fla.1972). *See United States v. Washington,* 550 F.2d 320, 330 (5th Cir. 1977), *cert. denied,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977).

In summary, there are a number of distinctions between this case and the *Brady* line of cases. Here, the omitted evidence was "discovered" during, not after, the trial. The trial judge, not the prosecutor, made the decision that the trial should continue without the transcript. The relevant information contained in the omitted evidence was put before the jury. The testimony at the third grand jury proceedings, as recounted by Braverman, was not clearly exculpatory.[31] Viewing the record as a whole, we cannot say that the actual possession by the defense of the transcript of the third grand jury proceedings for use in cross-examining Braverman could have created "a reasonable doubt that did not otherwise exist." *Agurs,* 96 S.Ct. at 2401–02. Moreover, since Braverman adopted at trial the complete essence of his testimony before that grand jury, for the defense to have introduced the transcript would have been a repetitious, cumulative, and, we think, clearly improper use of a prior consistent statement. Therefore, we hold that no constitutional error was committed.

## IV

For the reasons stated above, we continue to adhere to our policy that federal district courts must dismiss mixed petitions. Through the efficient use of pretrial procedures, the district courts can ferret out and identify the nature of all of a petitioner's claims and determine which of them have not been exhausted. As for the unexhausted claims, the district court can ascertain, on the record, whether the petitioner knowingly and willingly chooses to abandon them, and, if he does, can proceed with the exhausted claims. If the petitioner does not abandon these claims, his petition must be dismissed.

In this case, we AFFIRM the district court's finding of no merit in petitioners' exhausted claim relating to the Florida intermediate appellate court's refusal expressly to consider an assignment of error, REVERSE the grant of the writ on the *Brady* claim, and REMAND for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

HILL, Circuit Judge, SPECIALLY CONCURRING.

31. Braverman did not state that the petitioners had not committed the robbery; at best, his testimony was that they had not told him that they intended to commit it. *See United States v. Bensabat,* 568 F.2d 1226, 1228–29 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 98 S.Ct. 2822, 56 L.Ed.2d 770 (1978). Such testimony would be of value only to impeach his fourth grand jury testimony, which the defense effectively did.

I concur in the result announced for the majority together with the opinion authored by Judge Tjoflat. Inasmuch as the entire case was taken en banc, I find no fault in the majority's having decided, en banc, the ultimate issue and holding that the exhausted ground in the petition for the writ of habeas corpus was without merit and, therefore, reversing the grant of the writ by the district judge.

Judge Roney has authored what he entitles a dissenting opinion. Except for Judge Roney's conclusion that the ultimate issue should have been referred back to the panel and not decided by the en banc court, it does not appear to me that, operationally, there are any real differences between the opinions of Judges Tjoflat and Roney. Indeed, a dissent from a reversal is usually a vote for affirmance. Judge Roney does not indicate in any way that he would vote to affirm the district court in this case.

Dispute between the two opinions seems to center around choice of words and legal consequences which might flow from the language used by Judge Tjoflat for the majority. In that majority opinion the court announces what is said to be a rule hereafter applicable to the handling of mixed (exhausted grounds and nonexhausted grounds) petitions for the writ of habeas corpus. In jurisprudence, *rules* are said to be "precepts attaching a definite detailed legal consequence to a definite, detailed state of facts. If one likes, they are definite threats of definite, detailed official actions in case of a definite, detailed state of facts." Pound, *Hierarchy of Sources and Forms in Different Systems of Law,* 7 Tulane L.Rev. 475, 482 (1933). If, therefore the majority were today announcing a *rule* in the legal sense, the failure of our district brethren to follow that rule and dismiss, without prejudice, every petition for habeas corpus which contained a ground or grounds not yet presented for state relief would result in reversal upon appeal to this Court.

It is clear to me, however, that the majority does not promulgate a rule as we know it in law. It cannot be such a rule because the majority opinion proceeds immediately from its articulation to state the consequences of a violation; the consequences are not reversal but review on the merits of the district judge's resolution of the issue presented by the exhausted ground which he accepted and resolved in what would be defiance of the rule. I interpret the opinion for our Court as announcing a rule in the more colloquial use of that word; "as a general rule" mixed petitions should be dismissed without prejudice.

If Judge Tjoflat's words are so interpreted, Judge Roney's opinion says the same thing. In that opinion the generally expected dismissal of mixed petitions is so firmly anticipated that it would be announced that this court would never reverse a district judge for having dismissed one. So in the views of both my distinguished brothers, it is to be anticipated that, where a petition for habeas corpus relief is grounded in part upon a contention not theretofore presented to the state courts for relief, the entire petition will be dismissed without prejudice to its refiling after exhaustion of state remedies.

Yet, both authors contemplate that occasions will arise when a district judge will find in a mixed petition an exhausted ground which ought to be addressed without the delay that would be occasioned by deferring the matter until other grounds had been taken through the state system. That is as it should be. We are dealing here with the writ of habeas corpus which, as Judge Goldberg so eloquently sets out, is still entitled to be called The Great Writ. The orderly procedure sought by the majority opinion and by the opinion of Judge Roney is demanded because applications for The Great Writ have become so inappropriately routine and commonplace in criminal litigation today that some might understandably refer to it as the "Great(ly Abused) Writ." The needs of society for some semblance of finality in the administration of criminal justice are thwarted by the piecemeal presentation of endless applications for the writ of habeas corpus, first on one supposed ground and then on another, with federal courts addressing bits and

pieces of the petitioner's application theretofore presented to the state system while the state courts address other particles as a preview to their filing in the federal courts. Orderly procedure would be served by the mandate of a genuine rule forbidding that practice and requiring that no application for the writ be presented to the federal court until state relief on all grounds had been sought. As I see it, however, the reason that both the majority and Judge Roney recoil from such an absolute mandate is found in the nature of the relief sought in the writ. A proper petition is predicated upon the contention that a citizen of this free country is being held in prison, deprived of his liberty, when, under the law, there is no right in his custodian to hold him. We know that, in the haystack of petitions filed as a matter of course on so many occasions, from time to time to appears that a needle is found. When a district judge (or, indeed, a judge of the Court of Appeals) [1] senses the presence of a genuine assertion upon proof of which it will be demonstrated that a petitioner is deprived of liberty contrary to the laws of this country, such a judge must be free to reach through any underbrush of unexhausted grounds, faulty procedures, etc., and treat that contention.

The majority and Judge Roney anticipate, correctly I believe, that the administration of justice can rely upon district judges to accept and determine that sort of an exhausted ground in a mixed petition only when fundamental rights to freedom would be in jeopardy absent a prompt resolution. This confidence is expressed in the majority opinion by assuring the district judges that this court will review, on the merits, the resolution of the district judge of such an issue and will not reverse his having failed to dismiss the mixed petition.

My only discomfort with the majority opinion is that, in its choice of words, it has announced what appears to be a legal rule applicable to the district judges of this Circuit and yet anticipates that the district judge will not abide a rule of this court and

provides for appellate review of its violation. Interpreted as above, I do not believe that the district judges will be in violation of a rule of this court or in defiance of the supervisory powers of this Court upon those occasions when they sense the presence of a needle in the haystack and elect to probe further for it. Therefore, with these observations, I can and do concur in the opinion authored by Judge Tjoflat for the court.

THORNBERRY, Circuit Judge, with whom GODBOLD, Circuit Judge, joins, dissenting:

I fully join in Judge Roney's dissenting opinion but write separately—and briefly—to emphasize in the strongest terms my disagreement with a *per se* rule for the district courts. I find it deplorable that this court would fashion a dual system of judicial decision-making in the "mixed petition" context. I certainly agree that, on appeal, we can consider the merits of an exhausted claim, but I cannot subscribe to the shackling of our brethren on the district bench with a rigid standard that, in the name of an illusory state-federal comity, proclaims them less competent than ourselves to exercise sound discretion in these matters.

Today's decision also limits our review of the merits of exhausted claims, for a mixed petition case decided on the merits of a properly exhausted claim will not reach us unless the district court has either ignored the *per se* rule or overlooked the presence of an unexhausted claim. Petitioners with meritorious—and exhausted—claims will thus remain unconstitutionally restrained pending a potentially lengthy exhaustion process with regard to other unexhausted—and perhaps unrelated—claims. I cannot countenance a rule that ties the hands of the district courts and, indirectly, of this court in dealing with violations of fundamental rights.

GOLDBERG, Circuit Judge with whom TUTTLE, Circuit Judge, joins dissenting.

The en banc court today lets pass an opportunity to discard an anomalous and

1. 28 U.S.C. § 2241.

unfortunate limitation on the availability of federal habeas corpus relief for state prisoners. Mesmerized by a specter of its own creation, a litigious prisoner so diabolically clever that he may be counted on to outwit state's attorneys and federal district judges, the court today condemns real men of flesh and blood, untutored and unlettered in law, to years of unconstitutional confinement. Perhaps we as judges cannot be expected to understand the full meaning of imprisonment and to respond to the full measure of injustice visited upon one whose unlawful incarceration is prolonged for a year or more. We can, however, be expected to understand and respond to the historic office of the Great Writ, provision of "a swift and imperative remedy in all cases of illegal restraint or confinement." *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973), *quoting Secretary of State for Home Affairs v. O'Brien,* [1923] A.C. 603, 609 (H.L.). With all due respect, today the majority disappoints even this minimal expectation. For the unwitting, naive, or optimistic inclusion of a single unexhausted claim in a prisoner's petition, the majority would deny a federal hearing on a thousand exhausted claims. This is a new species of poisonous tree whose bitter fruit, I am convinced, is the frustration of justice. Respectfully, I dissent.

I.

Judges Roney and Thornberry properly reject the majority's rigid rule that the district courts are required to dismiss mixed petitions. I fully agree with my separately dissenting brethren on this point.[1] Indeed, Judge Roney's opinion takes us most of the way to the position I endorse. In going somewhat further than Judge Roney, I tread a well-beaten path and conclude that the district courts should be required to consider exhausted claims in mixed petitions unless these claims are substantially interrelated with unexhausted claims. This rule has commended itself to the judgment of five of the six circuits which have faced directly the problem of mixed petitions. *Miller v. Hall,* 536 F.2d 967 (1st Cir. 1976); *United States ex rel. Levy v. McMann,* 394 F.2d 402 (2d Cir. 1968); *United States ex rel. Boyance v. Myers,* 372 F.2d 111 (3d Cir. 1967) (per curiam); *Hewett v. North Carolina,* 415 F.2d 1316 (4th Cir. 1969); *Tyler v. Swenson,* 483 F.2d 611 (8th Cir. 1973), *r'aff'd in Triplett v. Wyrick,* 549 F.2d 57 (8th Cir. 1977).[2] Only the Ninth Circuit adheres to the view that the majority espouses today. *Gonzales v. Stone,* 546 F.2d 807 (9th Cir. 1976). While the views of our sister circuits are, of course, not binding upon us, such a coincidence of considered opinion is striking. A lonely sibling bears a heavy burden of justification and explanation when it discovers new imperatives of

1. As Judge Roney notes, this case was taken en banc for reconsideration of the panel's holding that this court was required to vacate the district court's grant of habeas relief on a properly exhausted claim if petitioner's federal habeas petition contained unexhausted claims for relief. I agree with the apparently unanimous conclusion of this court that our review on the merits of district court determinations respecting exhausted habeas claims is not precluded where the district court has entertained a mixed petition. Indeed, I believe such review is obligatory. Since the majority, in the course of reaching this result, has seen fit to reopen the question of the treatment of mixed petitions by the district courts, I take this opportunity to set forth my views on that question in some detail.

I, like my Brother Roney, would remand this case to the panel for consideration of the merits of petitioner's exhausted claims.

2. Where exhausted and unexhausted claims are substantially interrelated as a factual or legal matter, the district courts should be afforded discretion to dismiss the petition. Relevant factors, in addition to the degree of interrelation among the claims, might include the amount of delay consequent upon deferring consideration of the exhausted claims, the apparent substantiality of the exhausted claims, and the investment of the court's own resources in determining which claims had been exhausted. While the instant case does not raise the question of the appropriate scope of the district courts' discretion in such circumstances, I note that the "flexible rule" advocated by Judge Roney might find appropriate application in this area.

federalism not apparent to five courts of dignity co-equal with our own. That burden has not been carried.

## II.

The critical proposition in Judge Tjoflat's argument for the rule of complete exhaustion is that the enforceable norm in federal habeas corpus proceedings is a single federal proceeding in which all of a petitioner's potential claims are considered. This norm is supposedly derivable from the policies and provisions of Rule 9 of the Rules Governing Section 2254 Cases in United States District Courts, 28 U.S.C.A. foll. § 2254 (1977). The rule of complete exhaustion is asserted to be the instrument by which the norm is to be achieved.

Congress has by no means accepted the majority's critical proposition. I will quite readily concede the propriety of divining from Rule 9 the existence of a general policy favoring the resolution of all federal claims in a single federal proceeding. Insofar as the majority relies on Rule 9 for this much and no more, the court's reasoning is unexceptionable. However, in going beyond this modest conclusion to suggest that "rule 9 *forces* a petitioner to assert his claims promptly and in *one* petition," majority opinion at 357, (emphasis in original), and to adopt the rule of complete exhaustion in order to give "full effect to the objective of rule 9," majority opinion at 357, the majority has turned Rule 9 on its head. For the rule of Rule 9(b) governing successive petitions is the rule of *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963): a federal court *must* consider on the merits a second or successive petition asserting previously unasserted grounds for relief unless the failure to assert the new grounds in the earlier petition constituted abuse of the writ. Abuse of the writ may be found only if the failure to litigate the new claim on the prior application constituted a deliberate bypass or waiver within the meaning of *Fay v. Noia*,

372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *Sanders v. United States, supra.* Thus, while the *Sanders* standard strikes a balance between competing interest, the interest in considering all claims in a single proceeding and the interest in correcting constitutional error, the balance struck is one which *precludes* dismissal of second or successive petitions except in rare and extraordinary circumstances.

Rule 9(b) authorizes the district courts to dismiss a second or successive petition asserting new grounds for relief if the judge "finds that the failure of the petitioner to assert those grounds in a prior petition constituted *abuse of the writ.*" (Emphasis added.) The language suggested by the Supreme Court would have permitted dismissal if failure to assert the new grounds was "not excusable." Congress rejected this language and substituted the "abuse of the writ" standard of *Sanders v. United States, supra.* Congress feared that the "'not excusable' language created a new and undefined standard that gave a judge too broad a discretion to dismiss a second or successive petition. The 'abuse of the writ' standard brings Rule 9(b) into conformity with existing law." H.R.Rep. No. 94–1471, 94th Cong., 2d Sess. 5 (1976); *reprinted in* [1976] U.S. Code Cong. & Admin. News pp. 2478, 2482. Thus, Rule 9(b) reflects a deliberate and considered choice by Congress to reinforce the *Sanders* rule. In relying on Rule 9(b) as primary support for an enforceable norm of a single federal proceeding adjudicating a petitioner's entire case, the majority wholly disregards the balance struck by *Sanders* and expressly validated by Congress in Rule 9(b).

Rule 9(b), then, rejects the very norm which the majority attempts to derive from it. On the majority's own premises, the rule of complete exhaustion finds support in Rule 9(b) only because it is the instrument for enforcing the norm of a single federal proceeding.[3] Since Rule 9(b) rejects the

---

3. The majority does not purport to find in the language of Rule 9 any reference to the exhaustion requirement whatsoever. The Rule contains no such language. Nor does the majority purport to find any support for the rule of complete exhaustion in the legislative history

end, it provides no justification for the means.

Quite apart from all of the foregoing, the majority's preoccupation with the litigious prisoner has blinded it to a second fundamental inconsistency of the *Sanders* standard incorporated in Rule 9(b) and the rule of complete exhaustion. The "abuse of the writ" standard, as *Sanders* itself amply demonstrates, encompasses a highly individualized and fact-sensitive inquiry designed to insure that only individuals whose conduct is truly abusive are denied the opportunity to prove a case of entitlement to the Great Writ. In contrast, the rule of complete exhaustion which the majority purports to derive from that standard operates across-the-board without any reference to abusive behavior. Thus, while the majority at one point states that its concern is "with the petitioner who, prior to seeking federal relief, knows that he has several claims . . . ," majority opinion at 358, this claim rings hollow indeed. By reading Rule 9(b) as somehow endorsing a rule of complete exhaustion, the majority transforms a scalpel into a meat axe. Most objectionably, the axe blows will fall most heavily upon the necks of untutored and uncounselled prisoners, too naive or ignorant to circumvent the majority's rule by deleting unexhausted claims from their petitions. For as the majority itself concedes, apart from encountering a highly dubious claim of laches, the sophisticated litigious prisoner intent upon a strategy of piecemeal litigation, the only end of which is harassment, can carry out his program while avoiding dismissal simply by bringing successive petitions each of which asserts only claims which have been exhausted. Majority opinion at 358.[4]

Rule 9(a), authorizing dismissal of habeas petitions on laches grounds, is even more tenuously related to a rule of complete exhaustion than is Rule 9(b). At the outset, it is worth noting that the petitioner who brings his first federal petition the day after his appeal is decided adversely to him cannot be guilty of laches. Yet if he ignorantly, mistakenly, or deliberately includes in his federal petition an unexhausted claim, the majority requires the district court to dismiss the entire petition. On the other hand, a petitioner may be guilty of laches even if he has exhausted every claim in his petition, but waited twenty years to do it. Here, where a genuine laches problem may exist, the rule of complete exhaustion provides no sanction. The rule of complete exhaustion is a most inefficient instrument for advancing Rule 9(a)'s policy favoring the prompt presentation of claims.

The majority only connects the complete exhaustion rule to a laches defense by postulating a litigious, vexatious, prisoner of quite exceptional talent. This prisoner, intent on pursuing a strategy of piecemeal litigation rather than obtaining his release, might circumvent the rule of complete exhaustion by withholding his unexhausted claims. Should he do so, however, he runs the risk of encountering a laches defense when he presents the new claim in his second petition. In order to avoid encountering this defense, the majority tells us, the petitioner will bring all his federal claims forward in the initial federal proceeding. Thus, Rule 9(a) appears to provide an incentive to bringing all possible claims in a single federal proceeding.

With all due respect, it is this argument, and not the approach of our five sister circuits, which is "unrealistic." Majority opinion at 356. If there are indeed petitioners who sequence their trips to state and federal court with an eye to foreclosing defenses potentially available to the state in a subsequent proceeding, they are indeed

---

of Rule 9. So far as I have been able to determine, the legislative history contains no such support. *See* H.R.Rep. No. 94–1471, 94th Cong., 2d Sess. 5 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin. News, pp. 2478, 2482.

4. As we shall see *infra* in text at n. 12, this is only one of the respects in which the majority's rule of complete exhaustion fails to advance *the goal of a single federal proceeding while* simultaneously producing predictable injustice.

*rarae aves.*[5] To argue, as the majority appears to do, that a sanction which may alter the conduct of these few justifies a rule penalizing the many, is to allow a very small tail to wag a very large and important dog.[6]

The majority, thus, has woven a garment of exceptionally ill-matched cloth from the threads of Rule 9. Rule 9 provides nothing more than the emperor's newest set of clothes for the rule of complete exhaustion. Stripped of any pretense that Congress has commanded the rule of complete exhaustion, that rule can now be considered on its own merits.

### III.

Neither principle nor precedent counsels continued adherence to the rule of complete exhaustion. Instead, both point towards a rule requiring the district courts to entertain mixed petitions and to consider the merits of all exhausted claims not substantially interrelated with unexhausted claims. This rule protects the petitioner's interest in speedy consideration of his federal claim while at the same time giving full effect to the policies underlying the exhaustion requirement. In contrast, the rule of complete exhaustion purchases gains that are largely illusory at a price which is entirely unacceptable.

5. The majority also suggests that the rule of complete exhaustion will have the effect of denying a petitioner the opportunity to pursue an unfair trial strategy (!). The Clarence Darrow Joneses who apparently populate the state penitentiaries in the Fifth Circuit might otherwise include unexhausted claims in their petitions in the calculated hope of influencing the district court's resolution of the exhausted claims. Majority opinion at 359. I suppose it is possible to imagine a petitioner capable of formulating such a strategy. I cannot, however, imagine that the district judges of this circuit would be taken in by such a strategem.

6. Although I hesitate to enter an argument which I am firmly convinced has more to do with the court of the Red Queen than it does with the courts of this circuit, I must point out that even on the majority's own premises, the threat of a laches dismissal is not likely to be perceived as a very serious incentive to join all

At the outset, I note that the statutory provision requiring exhaustion bars a petitioner from obtaining federal relief if state law permits him to raise "the question presented." 28 U.S.C. § 2254(c). On its face, the statute appears to require the exhaustion of claims, not cases. *Miller v. Hall,* 536 F.2d 967, 969 (1st Cir. 1976).

The conclusion suggested by the statutory language finds firm support in an analysis of the structure of federal habeas corpus relief under *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), and *Sanders v. United States, supra. Brown* established the rule that a petitioner was required to present his federal claim only once to the state courts in order to exhaust state remedies. Even if state courts would entertain further petitions asserting the grounds already considered, federal relief would not be postponed until these state remedies had also been pursued to conclusion. Implicit in the rule of *Brown* is the proposition that a petitioner need not exhaust the capacity of the state system to discharge him from custody prior to invoking the federal forum. *See Roberts v. La Vallee,* 88 S.Ct. 195 (1967) (per curiam). The exhaustion requirement is intended to give the state courts a fair opportunity to pass on a federal claim before a federal court considers it. It follows that "once the federal claim has been fairly presented to

potential claims in the initial federal proceeding. A petitioner sophisticated enough to worry about the laches problem, but determined to pursue a strategy of piecemeal litigation, will certainly be clever enough to develop the simple strategem which permits him to pursue his plan and avoid a laches defense: file two separate, but simultaneous, petitions, one in federal court containing only exhausted claims, the other, in either federal or state court, containing only unexhausted claims. Filing of the petition containing unexhausted claims will foreclose a laches defense to the extent that mere notice of the existence of such claims has this effect. *See,* majority opinion at 358. Meanwhile the petition containing only exhausted claims would be considered on the merits. The rule of complete exhaustion is a very blunt and largely ineffective instrument for dealing with the legal prestidigitations of a habeas Houdini.

the state courts, the exhaustion requirement is satisfied." *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

*Sanders* adds a second structural element. A federal court is to entertain a second federal petition presenting new grounds for relief unless the court finds that the prisoner has abused the writ. *Sanders v. United States, supra,* 83 S.Ct. at 1078. The predicate for invoking this doctrine of "rare and extraordinary application," *Simpson v. Wainwright,* 488 F.2d 494, 495 (5th Cir. 1973), is a finding that the petitioner deliberately bypassed the opportunity to present his available claim in the first proceeding. *See Turnbow v. Beto,* 464 F.2d 527, 528 (5th Cir. 1972). It follows *a fortiori* from *Sanders* that the federal courts are, as a general matter surely, to be open to petitions presenting grounds for relief not assertable in the first petition because not exhausted at that time. Note, *Habeas Petitions with Exhausted and Unexhausted Claims: Speedy Release, Comity and Judicial Efficiency,* 57 B.U.L.Rev. 864, 871 (1977). As we stated in *Simpson v. Wainwright, supra,* the abuse of the writ doctrine, "could not apply to bar a return to the federal court by one who has been remitted to the state courts to exhaust and reappears alleging that he has done just that." 488 F.2d at 495. *See Tannehill v. Fitzharris,* 451 F.2d 1322, 1324 (9th Cir. 1971).

*Sanders* itself demonstrates just how narrowly limned are the policies disfavoring successive petitions. *Sanders'* first petition asserted three grounds for relief and was summarily dismissed by the district court. Subsequently, Sanders filed a second petition alleging for the first time that he was under the influence of narcotics at the time he entered his plea of guilty. The district court dismissed this petition without a hearing and the Court of Appeals affirmed, stating:

> Where, as here, it is apparent from the record that at the time of filing the first motion the movant knew the facts on which the second motion is based, yet in the second motion set forth no reason

why he was previously unable to assert the new ground and did not allege that he had previously been unaware of the significance of the relevant facts, the district court may, in its discretion, decline to entertain the second motion.

*Sanders v. United States, supra,* 83 S.Ct. at 1072, quoting 9th Cir., 297 F.2d 735 at 736–37. The Supreme Court, of course, reversed and remanded for a hearing to determine whether Sanders had abused the writ by deliberately bypassing the opportunity to present the claim in his first petition. *Id.,* 83 S.Ct. at 1080.

The *Sanders* Court cited *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924) as a case where abuse of the writ had been established. Wong Doo, the petitioner, asserted two grounds for relief in his first petition, but offered no proof in support of the second ground at the hearing held to consider his petition. The Court held that Wong Doo's subsequent application, relying solely on the second ground, was properly dismissed for abuse of the writ. In *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) where the Supreme Court reversed the district court for refusing to consider a new claim appearing for the first time in Price's *fourth* petition, the Court characterized *Wong Doo* as a case which, "involved a situation where one has properly raised an issue in an earlier petition, has received a full opportunity at a hearing to present evidence on the point, and has refused to avail oneself of that opportunity." *Id.,* 68 S.Ct. at 1062. And since *Sanders,* this court has on many occasions required consideration of grounds for relief asserted for the first time in a second or subsequent petition. *See, e. g., Simpson v. Wainwright, supra* (three previous petitions); *Turnbow v. Beto, supra* (three prior petitions); *Goins v. Allgood,* 391 F.2d 692 (5th Cir. 1968).

While I concede that neither *Sanders* nor *Brown* is logically inconsistent with a rule of complete exhaustion, together they certainly make highly dubious the majority's supposition that the enforceable norm of federal habeas corpus jurisdiction is a single

federal proceeding following exhaustion of all possible claims for release from custody. From *Sanders* we learn that there is no norm of a single federal proceeding; from *Brown* we learn that the exhaustion requirement does not mean that the federal remedy is to be unavailable to a prisoner until he has exhausted the capacity of the state system to release him from custody.[7]

A general rule of partial exhaustion is entirely consistent with the purposes of the exhaustion doctrine. Those purposes were stated in a student note quoted approvingly by the Supreme Court in *Braden v. 30th Judicial Circuit of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed. 443 (1973):

> the doctrine preserves the role of the state courts in the application and enforcement of federal law. Early federal intervention in state criminal proceedings would tend to remove federal questions from the state courts, isolate those courts from constitutional issues, and thereby remove their understanding of an hospitality to federally protected interests. Second, [the doctrine] preserves orderly administration of state judicial business, preventing the interruption of state adjudication by federal habeas proceedings. It is important that petitioners reach state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts.

Note, *Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1094 (1970), *quoted in Braden v. 30th Judicial Circuit Court of Kentucky, supra*, 93 S.Ct. at 1127. These policies are given full effect by a rule of partial exhaustion. State courts fully participate in the constitutional dialogue promoted by the exhaustion requirement when they pass on a claim prior to its being considered by a federal court. The federal court is informed and enlightened by the views of the state court when it has those views before it on any claim considered on the merits. Thus, a rule of complete, rather than partial, exhaustion does not further advance the interest in protecting the role of state courts in deciding constitutional claims. And since a rule of partial exhaustion fully insures that state courts will have an opportunity to rule upon any federal ground for relief before it is considered by the federal courts, a rule of partial exhaustion does not promote "early federal intervention" removing federal questions from state courts and isolating state courts from constitutional issues. As the First Circuit put it, "The very fact of exhaustion means that the state courts have ruled, or have had the chance to rule on the federal claim in the first instance." *Miller v. Hall, supra*, 536 F.2d at 969. Insofar as this policy underlying the exhaustion requirement is concerned, the rule of complete exhaustion is productive of very little but delay in the consideration of federal claims.

As to the second interest, preservation of orderly administration of state judicial business, a rule of partial exhaustion does not provide any incentive for the interruption of state adjudication or for bypassing the earliest opportunity for correction of trial errors, i. e., appeal within the state system. A prisoner who is interested in speedy release has every reason for pursuing his state remedies promptly, whether the rule governing reception of his federal claims is one of partial or complete exhaustion.[8]

---

7. In *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the Supreme Court held that a speedy trial claim exhausted in advance of trial was properly before the federal district court notwithstanding the fact that other unexhausted federal claims might be present or arise at trial. *Id.*, 93 S.Ct. at 1127–28. *Braden* has been read as rejecting the theory implicit in the rule of complete exhaustion, i. e., that the state must get a crack at a petitioner's entire case before federal relief is appropriate. *See Miller v. Hall, supra*, 536 F.2d at 969.

8. While it is true that grant of the writ will moot any pending state proceedings on unexhausted claims, thus aborting the state proceeding, the rule of complete exhaustion will produce unnecessary state proceedings on, perhaps frivolous, unexhausted claims. *See*, 582 F.2d 360 *infra*. Whether one or the other is the source of greater disruption of state processes is certainly arguable.

Indeed, the majority grudgingly concedes that "comity in a narrow sense has been served by the prior state consideration of the exhausted claim." Majority opinion at 359. In order to avoid the effect of this concession, however, the majority offers three insubstantial arguments. First, the majority argues that "the state has an interest in the resolution of the entire case" as well as in each of a petitioner's constitutional claims. Majority opinion at 359. If there is such an interest, it is the state's own, to promote or not as it sees fit, by its own rules of procedure. Should the state assert such an interest by requiring that all claims be brought in a single state proceeding, deliberate bypass of that proceeding will bar subsequent federal habeas corpus relief. *Murch v. Mottram*, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972) (per curiam).[9]

Even less plausible is the majority's suggestion that the rule of complete exhaustion is justified by an interest in avoiding intermittent interruption of a petitioner's imprisonment consequent upon repeated trips to federal court. Quite apart from the fact that in many cases a prisoner's claim can be ruled upon without his once seeing the outside of the prison walls, it hardly seems a matter for judicial notice that greater interruption of custody occurs when a prisoner makes a trip to the federal courthouse than when he makes a similar trip to the state courthouse to exhaust the unexhausted claims in his mixed petition.

Finally, the majority offers the "specter" of virtually simultaneous adjudications in state and federal court resulting in inconsistent relief on the claims.[10] Initially, it seems rather odd to justify a rule which places additional barriers in the path of the habeas petitioner by positing the case of a petitioner with two or more meritorious constitutional claims. Yet this is precisely the thrust and effect of the majority's argument. Moreover, should the problem of inconsistent relief be of serious concern in any given case, the district courts have ample power to shape or modify the remedy as needed.

In point of fact, a rule of complete exhaustion has significant adverse impacts upon comity between state and federal courts. Remitting a prisoner to state court to assert transparently frivolous new claims which must be addressed by a state court before the federal court will consider a serious, already-exhausted, claim, is decidedly not the best way to show respect for state courts. The state judge is put in the position of knowing that he is expending his time and the state's resources in consideration of a transparently frivolous claim which will undoubtedly prove to be a complete irrelevance in the subsequent federal

9. At an earlier point in its opinion, the majority suggests that several policies would be "best served if all a petitioner's claims are presented to the *state* court system at one time." Majority opinion at 356. (Emphasis added.) It should be obvious that the rule of complete exhaustion has not the slightest relation to the number of state court proceedings on a petitioner's case. So long as the state courts permit a petitioner to raise new or additional claims in a second state petition, a matter of state law, a federal court's dismissal of a mixed petition will provide no special incentive for a prisoner to consolidate all his potential claims in a single state proceeding. Thus, even if we were to assume, and I do not, that federal courts are in the business of deciding that it is desirable to have all claims presented in a single state proceeding, the rule of complete exhaustion is utterly irrelevant to attaining this objective which is advanced by application of an entirely separate rule.

Likewise, I find incomprehensible the majority's implication that the rule of complete exhaustion contributes to the perception of a state trial as "a decisive and portentous event." Majority opinion at 359, *quoting Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). A conviction is no more final under a rule of complete exhaustion than it is under a rule of partial exhaustion. The choice between these rules is entirely independent of the possibility *vel non* of ultimately asserting a given basis for attack upon a conviction.

10. Such a situation might arise where, for example, a federal court, ruling on the exhausted claim that the petitioner had been denied his right to counsel on appeal, directed the state to grant an appeal while a state court, ruling on an unexhausted claim that a confession had been coerced, overturned the conviction and granted a new trial.

proceeding which will focus on the serious exhausted claim.

What little empirical evidence is available suggests that the efficiency gains achieved by a rule of complete exhaustion are very small. Professor Shapiro's study of federal habeas corpus in Massachusetts is noteworthy for the light it sheds on the functioning and malfunctioning of the exhaustion requirement in a jurisdiction applying the rule of partial exhaustion for which I contend. *See* Shapiro, *Federal Habeas Corpus: A Study in Massachusetts*, 87 Harv.L.Rev. 321 (1973). Of the 257 petitions filed in the U.S. District Court for Massachusetts during the three-year study period, only 34 were filed by prisoners who had filed any previous federal petitions. Even if we were to indulge the incredibly generous assumption that a rule of complete exhaustion would induce each of these repeat petitioners to bring every one of their claims in a single federal proceeding, it is obvious that the repeat petition is of rather minor significance in the habeas corpus caseload, to say nothing of the overall federal caseload. Since a strict accounting of the theoretical gains achieved by a rule of complete exhaustion would have to include a debit for the time spent by state courts reviewing unexhausted claims which would never be presented under a rule of partial exhaustion, it is clear that the net gains would be very small indeed.

Professor Shapiro's study also points out that failure to exhaust state remedies was by far the most common basis for dismissal of petitions filed in Massachusetts during the study period; over half of all petitions filed were dismissed for failure to exhaust. *Id.* at 356. These figures suggest that even in a jurisdiction applying a rule of partial exhaustion, the exhaustion requirement continues to play a critical function in the allocation of responsibility between state and federal courts.[11] A rule of partial exhaustion is in no sense an implied repeal of the exhaustion requirement.

Finally, even assuming the ultimate desirability of the majority's goal of a single federal proceeding adjudicating all a petitioner's federal claims, the rule of complete exhaustion is ineffectual in achieving that end. So long as a petitioner with both exhausted and unexhausted claims refrains from including the unexhausted claims in his petition, the petition cannot be dismissed under the majority's rule. His second petition, asserting only newly exhausted grounds, likewise cannot be dismissed. The majority concedes this. Majority opinion at 358. A petitioner clever and sophisticated enough to understand and be influenced in his behavior by the majority's rule will also be clever and sophisticated enough to avoid its effect.[12] The specter which haunts the majority opinion proves in the end too elusive to grasp. Meanwhile, the unsophisticated petitioner who appends to his federal petition some new notion not previously presented to the state courts, is denied a federal hearing on the merits of his exhausted claims.[13] Simultaneously under-inclusive and over-inclusive, the majority's requirement of complete exhaustion has none of the characteristics of a good rule. In sum, the efficiency gains achieved by adoption of the rule of complete exhaustion are quite possibly illusory, certainly small, and undeniably achieved by penalizing the wrong people.

11. Professor Shapiro draws another conclusion from these statistics, i. e., that the exhaustion requirement ought to be liberalized in order to reduce the number of dismissals for failure to exhaust which, in his view, do not advance the policies underlying the requirement. Id. at 359–61.

12. The majority's only response to this undeniable fact is the laches argument discussed in Part II, *supra*. As I showed in my discussion of that argument, the laches argument is a good deal less than compelling.

13. Habeas corpus petitioners are, like other civil litigants, free to amend their pleadings. Indeed, district judge endeavoring to show an appropriate degree of tolerance for a prisoner's lack of familiarity with rules of pleading and procedure, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Price v. Johnston, supra,* 68 S.Ct. at 1063, could certainly inform petitioners presenting mixed petitions of their right to amend and the consequences, i. e., dismissal, of failing to do so.

## IV.

There is one additional interest which must be considered today. It is an interest as remarkable for the recognition given it by our sister circuits as for the majority's apparent indifference to it. I speak of the prisoner's interest in speedy release from unconstitutional confinement.

There is no demand more urgent, more insistent, more deserving of our time and attention and than the demand of one who claims to be unlawfully confined. To be imprisoned is to be denied the society of one's fellow men. To be imprisoned is to be forcibly separated from loved ones, spouse, children, parents. To be imprisoned is to be subjected to a numbing, relentless, regimentation. To be imprisoned is, far too often, to be subjected to barbaric and unconscionable conditions of confinement. To be imprisoned unlawfully is to be denied the essence of life and liberty without just cause.

This is the moral burden we bear when we defer consideration of a petition for the Great Writ. This burden cannot possibly be supported by considerations of judicial economy and efficiency; an Atlas, not an Anchises, of a justification is needed to shoulder the burdens of the rule of complete exhaustion. A judge's time is precious, to be sure, but precious only in relation to the tasks the judge performs. In a habeas corpus case, we are dealing with human life and human liberty, precious commodities even in today's world of depreciated traditional values. I will not participate in the process of depreciating further human life and liberty by accepting the proposition that saving an hour or two of a judge's time justifies keeping a man locked behind the bars of a state penitentiary for a year or more.

We are heirs to the most precious legacy of Lord Coke, the power to discharge from custody even one imprisoned by order of the King. Today, the majority sells that legacy for a mess of pottage, a gruel composed of questionable notions of efficiency and vague notions of federalism. With all due respect to my brethren in the majority, judges are not good systems analysts or traffic controllers in the administration of justice. We do not have the training; we do not have the data. While we must be conscious of the state of our docket, the allure of a faddish modernity, of a stopwatch style of jurisprudence, will prove as treacherous as the Sirens' Song. Today's decision sacrifices on the alter of a spurious and specious science of efficiency the constitutional guarantees which we profess to hold most dear. For the sake of a ritualized obeisance to the supposed demands of comity, today's decision defers the vindication of constitutional rights. I would abjure this new legal religion. For us, the Great Writ should be as Holy Writ.

Since I am firmly convinced that the majority today has used the exhaustion doctrine "as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence," *Braden v. 30th Judicial Circuit Court of Kentucky, supra,* 93 S.Ct. at 1127, I dissent.

RONEY, Circuit Judge, with whom THORNBERRY, GODBOLD and MORGAN, Circuit Judges, join, dissenting:

I respectfully dissent. This case was taken en banc for essentially one reason. A United States federal judge had granted a writ of habeas corpus on the ground that petitioner was being held by the State of Florida in violation of the United States Constitution. A panel of this Court refused to reach the merits of an appeal from that writ but reversed on the ground that petitioner had other possible grounds for relief that had not been pursued to exhaustion in the state system. *Galtieri v. Wainwright,* 545 F.2d 942 (5th Cir. 1977).

That panel decision was one of a kind. No other case in federal jurisprudence has been found or cited where the *grant* of habeas corpus relief on an exhausted claim was reversed without review because unexhausted claims were present. That decision clearly created an issue for en banc consideration.

To be sure, we have contrary language in opinions, but unless a new era in the precedential requirements of legal decisions is upon us, no amount of footnoted rhetoric can overcome the fact that in the only three cases found in this Circuit which required the court to face this situation, the *grant* of habeas corpus relief was reviewed, even though there were unexhausted issues. *Moye v. Highsmith,* 460 F.2d 1388 (5th Cir. 1972), aff'g *Moye v. Georgia,* 330 F.Supp. 290 (N.D.Ga.1971); *West v. Louisiana,* 478 F.2d 1026 (5th Cir. 1973), *exhaustion issue affirmed en banc,* 510 F.2d 363 (5th Cir. 1975), mem.; *Lamberti v. Wainwright,* 513 F.2d 277 (5th Cir. 1975). The *Moye* opinion did not discuss the question raised here, but the Court did affirm the district court's grant of habeas corpus relief, even though the district court expressly noted that petitioner had raised several unexhausted issues.

In *West, supra,* petitioner had exhausted his state remedies as to the claim on which the district court granted relief, but not on other grounds. Although the opinion stated that ordinarily exhaustion is required on all issues, the Court in fact reviewed the grant of the habeas corpus writ on the merits.

In *Lamberti, supra,* the Court found the ground for granted relief was not exhausted, which put the district court in direct conflict with the exhaustion rule. Other contentions being interrelated, the district court was directed not to consider the petition until all claims had been exhausted. Our Court reversed the grant of habeas corpus, however, not just because there were unexhausted claims present, but because the claim underlying the writ itself had not been exhausted.

No other federal decision has been cited where contrary action was taken.

To address the precise issue before this Court, realizing that the en banc court writes on a clean slate, I would clearly and unequivocally hold that any time a federal judge has granted habeas corpus relief reviewable by this Court, we will review that action on appeal even though there are other unexhausted grounds for relief that might be available to the petitioner. Then I would remand the case to the panel to consider the merits of the district court's action in this case.

If we are constrained to announce some rules not required for the decision of this case, I would follow the flexible rule this Court has taken in the past and leave it to the appellate court's discretion to review denied claims, even though unexhausted claims were presented below or asserted on appeal. Since the writer has been on this Court it has been the practice to affirm in many instances the denial of relief on such exhausted claims, a practice often buried in our Local Rule 21 practice, because not considered of precedential importance. Enough opinions have been published, however, to reveal that this Court has often followed such a course. *See, e. g., Harris v. Estelle,* 487 F.2d 1293 (5th Cir. 1974) (affirming denial of relief on merits of exhausted claim); *Moye v. Highsmith,* 460 F.2d 1388 (5th Cir. 1972), aff'g *Moye v. Georgia,* 330 F.Supp. 290 (N.D.Ga.1971) (affirming grant of relief on exhausted claim); *McDonald v. Wainwright,* 466 F.2d 1136 (5th Cir. 1972) (affirming denial of relief on merits of exhausted claim); *Hill v. Dutton,* 440 F.2d 34 (5th Cir.) (affirming denial of relief on merits of exhausted claim), *cert. denied,* 404 U.S. 845, 92 S.Ct. 145, 30 L.Ed.2d 81 (1971); *Lee v. Wiman,* 280 F.2d 257, 264 (5th Cir. 1960) (issue-by-issue approach preferred).

As to the procedure to be followed in the district court, I would allow a flexible rule. I would leave it to the sound discretion of the district judge to decide whether the efficiency of his office or the ends of justice are better served by considering exhausted claims asserted in a petition that also contains unexhausted claims. Subject to review only for abuse of discretion, the court is, of course, at liberty to dismiss for failure to exhaust all claims.

The rigid rule argued in Judge Tjoflat's opinion has been rejected by other circuits. Five circuits have adopted a rigid rule that, in the absence of unusual circumstances, district courts are *required* to consider ex-

hausted claims even though the petition also contains frivolous claims or unrelated claims to which there has been no exhaustion. *Miller v. Hall,* 536 F.2d 967 (1st Cir. 1976); *Cameron v. Fastoff,* 543 F.2d 971 (2d Cir. 1976); *United States v. Deegan,* 440 F.2d 304, 305 n.1 (2d Cir. 1971); *United States v. McMann,* 394 F.2d 402 (2d Cir. 1968); *United States v. Boyance,* 372 F.2d 111 (3d Cir. 1967); *Hewett v. North Carolina,* 415 F.2d 1316 (4th Cir. 1969); *Triplett v. Wyrick,* 549 F.2d 57 (8th Cir. 1977); *Tyler v. Swenson,* 483 F.2d 611, 614 (8th Cir. 1973).

Three circuits have not expressly articulated their rule. These courts have simply passed on the merits of appeals from decisions on claims in mixed petitions. *Meeks v. Jago,* 548 F.2d 134 (6th Cir. 1976), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977); *Brown v. Wisconsin State Dept. of Public Welfare,* 457 F.2d 257 (7th Cir. 1972); *Smith v. Gaffney,* 462 F.2d 663 (10th Cir. 1972); *Watson v. Patterson,* 358 F.2d 297 (10th Cir.), *cert. denied,* 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103 (1966).

The Ninth Circuit has adopted the view that when mixed claims are presented, a district court should not address the merits of any issue until the available state remedies are exhausted as to every issue. *Gonzales v. Stone,* 546 F.2d 807 (9th Cir. 1976); *James v. Reese,* 546 F.2d 325 (9th Cir. 1976). It should be noted that in each of these cases, the district court had dismissed the petition for failure to exhaust all claims. This action was affirmed by the Ninth Circuit, a result that could well be attained under a rule leaving such decision to the district judge's discretion.

Judge Tjoflat's rationale for a rigid rule for district courts overlooks the fact that so-called mixed petitions are seldom filed as such, and quite often a great deal of work is done in the case by the district court, its staff and counsel, before it is discovered that some claims are in fact unexhausted. It may well be that judicial efficiency is better served in such cases for the district court to go ahead and rule on the exhausted issues, rather than to cast the case out for later repetition of the judicial exercise and confrontation by perhaps a different judge. A flexible rule leaving the course to be followed in a particular case to the sound discretion of district judges will satisfy all the concerns expressed by Judge Tjoflat for judicial efficiency in a system which in fact permits successive petitions.

Several considerations underlie the correctness of this decision: (1) the historical and current value of the petition for writ of habeas corpus in our judicial system, *see* Sokol, Federal Habeas Corpus 1–27 (2d ed. 1969); (2) the fact that each circuit judge has original jurisdiction of petitions for writ of habeas corpus, if we choose to exercise it, in addition to our appellate jurisdiction, 28 U.S.C.A. § 2254(a); (3) the statutory restriction of 28 U.S.C.A. § 2254(b) proscribes the *grant* of relief on an unexhausted claim, not the denial thereof; (4) exhaustion is bottomed on comity, not jurisdiction; and (5) the doctrine of comity is not undermined by federal consideration of exhausted issues.

In conclusion, I would disavow any prior opinions of this Court that indicate a grant of habeas corpus on an exhausted issue in a mixed petition to be either improper, inappropriate, or unwise. I would hold that our Court is required to review any grant of habeas corpus relief on the merits. I would remand the case to the panel of this Court that heard oral argument for decision on the merits of this appeal.